Motion for Rehearing Overruled








 

Motion
for Rehearing Overruled.  Affirmed
and Substitute Memorandum Opinion on Rehearing filed December 4, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00295-CR

____________

 

EUGENE JELKS, JR., Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 1057145

 



 

M E M O R A N D U M   O P I N I O N   O N   R E H E A R
I N G








Appellant=s Motion for Rehearing is overruled.  The
opinion issued October 16, 2008 is withdrawn and the following opinion is
substituted therefor.  Appellant entered a plea of not guilty to the offense of
possession of a controlled substance with intent to deliver.  He was convicted,
and the jury assessed punishment, enhanced by two prior convictions, at 30
years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In two
issues, he contends that (1) the evidence was factually insufficient to support
his conviction, and (2) the trial court erred in denying his motion to
suppress.  We affirm.

I.  Background

On February 9, 2006, Deputy M.D. Mehring of the Harris
County Sheriff=s Department stopped a vehicle for failure to signal
turning from a major roadway into a private driveway.  There were two people in
the vehicle.  Because Deputy Mehring was riding alone, he called for back-up
officers.  When Mehring ran a computer check of the driver, he found she had
open arrest warrants.  While waiting for confirmation of the warrants, the
back-up officers arrived.  The back-up officers were Deputies VanDine and
Rocabado of the Harris County Sheriff=s Department.[1] 
Appellant was the passenger in the vehicle.

When Deputy VanDine arrived at the location of the traffic
stop, he approached appellant and asked to see his driver=s license. 
VanDine explained that because the driver had outstanding warrants, the vehicle
would be released to the passenger if he had a valid driver=s license. 
VanDine noted that appellant was looking at him and Deputy Rocabado with a
scared, nervous expression.  He and Rocabado noticed that, despite the cool
weather, appellant was sweating, shaking nervously, and moving around in the
passenger seat.  Because of appellant=s behavior,
VanDine explained that it is routine to ask the individual to step out of the
car so that he can be frisked for weapons.  








While checking for weapons, VanDine felt something hard,
round, and narrow between appellant=s buttocks. 
VanDine testified that whenever he placed his hand on the object, appellant
turned and attempted to move away from VanDine.  A computer check on appellant=s driver=s license revealed
two outstanding warrants.  Because of the outstanding warrants, VanDine
handcuffed appellant with his hands behind his back and placed him in the back
seat of the patrol car behind the passenger seat.[2] 
Deputy Rocabado was seated in the passenger seat during the drive to the Humble
city jail.  She testified that during the ride to the jail, appellant twisted
and turned in his seat and kicked the bottom of her seat.  Upon arrival, the
patrol car was parked and locked in a sally port, and appellant was immediately
taken to the jail where he was strip-searched.  The deputies performing the
search did not find the object felt by VanDine at the scene, so they searched
the patrol car, which was still parked in the sally port.  While searching the
car, they found an item under the front passenger seat, which was later
identified as a cocaine cookie weighing 27.25 grams.

Both Rocabado and VanDine testified that prior to leaving
on patrol that day they had thoroughly searched the patrol car.  Earlier in the
day, while off duty, VanDine had thoroughly cleaned the car, including
detailing the interior.  VanDine routinely checks his patrol car prior to
leaving on patrol to ensure that if anyone left anything in the car he could
identify the item=s owner.  VanDine was Rocabado=s supervisor
during her training, so he instructed her to thoroughly search the car before
they left on patrol that day.  After Rocabado searched the car, VanDine
double-checked her search.  Both deputies found nothing in the car prior to
leaving on patrol that day.  Further, no one else had been in the patrol car
until appellant was arrested.

Appellant was subsequently indicted for the offense of
possession of a controlled substance with intent to deliver.  His first trial
in October, 2006 ended in a mistrial.  After a second trial, he was convicted,
and the jury assessed punishment at 30 years= confinement.

 

 








II.  Factual Sufficiency

In his first issue, appellant contends the evidence is
factually insufficient to support his conviction for possession with intent to
deliver.  

A. 
Standard of Review

In a factual sufficiency review, we review all of the
evidence in a neutral light, favoring neither party.  Watson v. State,
204 S.W.3d 404, 414B15 (Tex. Crim. App. 2006).  We then ask
whether the evidence supporting the conviction, although legally sufficient, is
nevertheless so weak that the jury=s verdict seems
clearly wrong and manifestly unjust, or  whether, considering conflicting
evidence, the jury=s verdict is against the great weight and
preponderance of the evidence.  Id.; Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000).  We give deference to the jury=s determinations,
particularly those concerning the weight of the evidence and the credibility of
witness testimony.  See Johnson, 23 S.W.3d at 8B9.

B. 
Possession








To prove the offense of possession of a controlled
substance, the State was required to show that appellant (1) exercised actual
care, control, and management over the controlled substance and (2) was
conscious of his connection with the controlled substance and knew what it
was.  See Tex. Health &
Safety Code Ann. '' 481.002(38), 481.112(a) (Vernon 2003
& Supp. 2007); Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995).  Because appellant was not in exclusive possession of the vehicle where
the contraband was found, the State must affirmatively link appellant to the
contraband.  Brown, 911 S.W.2d at 748.  This proof must have established
that his connection with the cocaine was more than just fortuitous.  See Poindexter
v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).  Links to demonstrate
that connection could include things such as whether the cocaine was (1) in
plain view, (2) conveniently accessible to the accused, (3) in a place owned by
the accused, (4) in a car driven by the accused, (5) found on the same side of
the car as the accused, and (6) found in an enclosed space; and whether (7) the
accused=s conduct
indicated a consciousness of guilt.  See Hurtado v. State, 881 S.W.2d
738, 743 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d). 

The record reflects the following facts:

$                  
When
approached by the deputies, appellant acted nervous and was moving around in
his seat.

$                  
When
VanDine frisked appellant, he turned and tried to move away from VanDine.

$                  
VanDine
felt a hard, round object between appellant=s buttocks, a
location Officer Abraham Vanderberry testified was a common location for
concealment of controlled substances.

$                  
The
cocaine was not in the patrol car before appellant was placed in the back seat.

$                  
Appellant
was the only occupant of the back seat.

$                  
While
being transported, appellant twisted and turned in his seat and kicked the
front passenger seat where the cocaine was eventually found.

$                  
The
hard, round object previously felt by VanDine was not found during the
strip-search of appellant.

$                  
While
the car was parked in the sally port, it was locked and no one else had access
to it.








While the cocaine was not in plain view under the back seat
of the patrol car and while the car was not owned or driven by appellant, the
cocaine was found on the same side of the car as appellant in an enclosed space
in which appellant was the only occupant.  We find the evidence is not so weak
that the jury=s verdict seems clearly wrong or manifestly unjust. 
Appellant did not present evidence on his own behalf, but relied on his
cross-examination of the State=s witnesses.  Considering any conflicting
evidence, we find that the jury=s verdict is not against the great weight
and preponderance of the evidence.  The evidence was factually sufficient to
show that appellant exercised care, custody, and control over the cocaine and
that he knew that it was cocaine.

C. 
Intent to Deliver

Appellant further claims that the evidence is factually
insufficient to show that he had intent to deliver the cocaine.  Intent to
deliver may be shown by circumstantial evidence, including expert testimony by
experienced law enforcement officers.  Reed v. State, 158 S.W.3d 44, 48B49 (Tex. App.CHouston [14th
Dist.] 2005, pet. ref=d).  Intent to deliver may be inferred
from the quantity of drugs possessed, and it may also be inferred from the
manner in which the drugs are packaged.  Rhodes v. State, 913 S.W.2d
242, 251 (Tex. App.CFort Worth 1995), aff=d, 945 S.W.2d 115
(Tex. Crim. App. 1997).  

The record reflects that appellant possessed a cookie of
cocaine, which weighed 27.25 grams.  Officer Abraham Vanderberry of the Houston
Police Department narcotics division testified that a personal use quantity of
crack cocaine is two to three rocks, which are usually cut off of a cookie with
a razor blade.  Each rock usually weighs between .1 and .2 grams.  He further
testified that 27 grams of crack cocaine is a Adistributive
amount of cocaine.@

Based on the amount of cocaine appellant possessed, the way
it was packaged, and the expert testimony of Officer Vanderberry, we find that
the proof of appellant=s guilt was not so obviously weak as to
undermine confidence in the jury=s determination,
nor was the contradictory evidence so strong that the standard of proof beyond
a reasonable doubt could not have been met.  See Watson, 204 S.W.3d at
414B15.  Appellant=s first issue is
overruled.

 

 








III.  Motion to Suppress

In his second issue, appellant contends that the evidence
obtained as a result of his arrest was not admissible because the traffic
warrants on which appellant was arrested were not supported by statements of
probable cause.  

We review a trial court=s ruling on a
motion to suppress under an abuse of discretion standard.  Villareal v.
State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).  The trial judge is the
sole fact finder and we give almost total deference to the trial court=s determination of
historical facts when supported by the record.  State v. Ross, 32 S.W.3d
853, 856 (Tex. Crim. App. 2000).  The same deference is accorded to
determinations of mixed questions of law and fact if their resolution depends
upon witness credibility and demeanor.  Id.  We will sustain the trial
court=s ruling if it is
reasonably supported by the evidence and is correct on any theory of law
applicable to the case.  Villarreal, 935 S.W.2d at 13.

During a traffic stop, an officer is entitled to request a
driver=s license, proof
of financial responsibility, and registration and run a computer check on the
information provided.  See United States v. Brigham, 382 F.3d 500, 509
(5th Cir. 2004); Kothe v. State, 152 S.W.3d 54, 66B67 (Tex. Crim.
App. 2004).  If the computer check shows an outstanding warrant for the individual=s arrest, the
officer has probable cause to arrest the individual.  Haley v. State,
480 S.W.2d 644, 645 (Tex. Crim. App. 1972); Oliver v. State, 10 S.W.3d
411, 416 (Tex. App.CWaco 2000, no pet.); Tex. Code Crim. Proc Ann. art. 15.26
(Vernon 2005). 








Deputy VanDine explained that he checked appellant=s driver=s license because
he would release the vehicle to appellant if his driver=s license was
valid.  Appellant was arrested on the outstanding traffic warrants that were
discovered as a result of the computer check of his driver=s license. 
Appellant challenged the arrest, alleging that the warrants were not based on
probable cause.  If the State seeks to justify an arrest based on an arrest
warrant, it must produce both the warrant and the supporting affidavit in the
trial court.  Etheridge v. State, 903 S.W.2d 1, 19 (Tex. Crim. App.
1994).  This procedure permits the trial court to review the documents and
determine whether probable cause exists and whether the accused=s rights have been
protected.  Id.

At his first trial, appellant raised the motion to suppress
in the following manner:

THE COURT:
Okay.  First of all, Mr. Duer [defense counsel], did you B you have the motion to suppress on file?

 

MR. DUER:
Yes.

 

THE COURT:
All right.  Did you want to put on any evidence in regard outside the jury=s presence on the issue of your motion to suppress?

 

MR. DUER:
No.

 

THE COURT:
Okay.  So do you then rest on your motion, other than argument?

 

MR. DUER:
Well, let me back up just a minute.  I want to resolve the issue on the
warrants.  I know what you=re going to do
about those.  Just tell me so I can put on the record what I need to put on the
record.

 

MS.
PROSCECUTOR: I can put on the record, I show that he was booked on both of
those warrants.  So I=m making
a call to Judge (inaudible) court for the copies of the actual, I guess, couple
of warrants B

 

MR. DUER: And
the affidavits B

 

MS.
PROSECUTOR:  B the records actually show the outstanding warrants
and that he was booked on those two warrants (inaudible), which is I assume
after he left the B 








THE COURT:
(Inaudible)?

 

MS.
PROSECUTOR: Yeah.

 

THE COURT:
Okay.

 

MS. TAYLOR
[prosecutor]: And also did verify the warrants before taking him in B

 

THE COURT:
That=s his testimony, I understand that.

 

MR. DUER:
Right, I heard him say that.  I=m just saying
that B

 

MS.
PROSECUTOR: That you want a hard copy.

 

MR. DUER:
Uh-huh, and to make part of the record.

 

MS.
PROSECUTOR: Okay.

 

MR. DUER:
And so I=m going to object at this point in time until we get
this issue involved [sic].  And I don=t
know how you want to involve [sic] it.  I mean B

 

MS.
PROSECUTOR: Based on the state of the record, would it be okay to conditionally
admit the evidence and then B

 

THE COURT:
Yeah, that=s my thought.  Just conditionally admit it and if they
kept the warrants proper form then B

 








MR. DUER:
Subject to my motion and my objection at this point in time and that we=ll review the warrants when they get here with the probable
cause affidavits and then you=ll make your ruling then depending on which way it
goes then, that=s fine with me.

(emphasis
added)

At the
close of the State=s case, the following exchange took place:

MS. TAYLOR:
Judge, we don=t really have anybody else.  I just didn=t know if we needed to take care of the motion.

 

THE COURT:
No.  Because I denied his motion.

 

MS. TAYLOR:
Okay.

 

THE COURT:
If something happens, I can deal with it in another manner.  Right?

 

MR. DUER:
Okay.  So we=re going to go forward from here?  Just so I
understand B 

 

THE COURT:
Uh-huh, because State=s 1 is admitted.[3] 
State=s 1 is admitted.  If we got (inaudible) or something
of that sort, which it doesn=t appear that
they are, I can (inaudible).

 

MR. DUER:
Okay.  I mean, just in addition, before we go any further here, on the notion
of chain of custody, I would object to this being offered into evidence because
they failed to establish chain of custody.  They have a missing link in it.

 

Appellant
did not pursue his probable cause objection further.  Moreover, there was no
indication in the record that the court had not reviewed the warrants and the
probable cause affidavits.








In the
second trial, which is the subject of this appeal, the trial court ruled as
follows:

THE COURT:
All right.  Back in October, when this case was initially set for trial, the
defense filed a motion to suppress and on October 17th of 2006, the Court,
based on the evidence heard at the prior hearing, which will certainly be made
a part of this record, if necessary, denied the motion.

It=s my understanding that the defense wanted to go
ahead, for the purposes of having the Court sort of review that ruling, to have
the actual warrants that Mr. Jelks was arrested for placed into evidence; am I
correct?

 

MR. DUER:
That=s the B the only issue
I think is B today is that we=ve
got copies of the warrants today, marked as State=s 2 and 3.

 

MS. TAYLOR:
2 and 3.

 

MR. DUER:
Just want to make sure that they are made part of the record for the appeal.

 

THE COURT:
Okay.

 

MR. DUER:
And I understand you ruled on it already.  I think it=s clear that he was arrested on these two warrants. 
Our position is the warrants are insufficient.  They don=t state probable cause, but we just want to make sure
that was part of the record and we=re
ready to go forward.  That=s all we have
on that issue.

 

THE COURT:
All right.  So, I will admit State=s
Exhibits 2 and 3.  I=ve reviewed 2 and 3 and the Court does not intend to
change its ruling on the motion, based on the review of those documents.

 

MR. DUER:
Okay.  We=re ready then.

 








The
record from appellant=s first trial reflects that the trial court, appellant=s lawyer, and the prosecutor
discussed production of the warrants and affidavits, and that the State
arranged for hard copies to be produced.  When the trial court denied the
motion, appellant did not make a further objection.  It appears from the record
that the warrants and affidavits were produced and the court was satisfied with
the probable cause statements.  

At the
second trial, the trial court re-affirmed its ruling from the first trial, and
agreed to include the warrants in the record.  Appellant argued again that the
warrants did not state probable cause, and ensured that the warrants were
admitted into evidence, but did not indicate that the affidavits were not
attached to the warrants.  After the second trial, the court entered findings
of fact and conclusions of law in which it concluded, among other things, that
Deputy Van Dine verified the warrants and that the warrants were Averified and valid.@ 

On appeal, appellant contends that the warrants were
deficient because no affidavits were attached to the warrants.  Appellant
failed to make that objection at trial.  The purpose of the rule requiring a
party to make a complaint to the trial court by specific and timely request,
objection, or motion as a prerequisite to presenting a complaint for appellate
review is to ensure that the trial court will have an opportunity to prevent or
correct any error.  Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex.
Crim. App. 2005).  At the first trial, defense counsel requested that the
affidavits be produced and the prosecutor called the judge to obtain copies of
the warrants and affidavits.  When the trial court denied the motion to
suppress based on its review of the documents, appellant did not object to any missing
documents.  There is no indication in the record that the affidavits were not
produced.  At the second trial, appellant specifically requested that the
warrants be admitted into evidence.  If the affidavits were indeed not produced
to the trial court, it was appellant=s responsibility
to timely raise the issue in order for the trial court to correct the error if
possible.  Tex. R. App. P. 33.1. 









Appellant asks this court to presume that because the
affidavits are missing from the appellate record that they were never presented
to the trial court.  However, appellant=s presumption is
not supported by the record.  The record reflects that the trial court reviewed
the warrants and affidavits and found sufficient probable cause to arrest
appellant.  Without copies of the probable cause affidavits in the record, we
cannot review the trial court=s conclusion the warrants were supported
by probable cause.  Appellant=s second issue is overruled.

The judgment of the trial court is affirmed.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

Judgment rendered
and Memorandum Opinion on Rehearing filed December 4, 2008.

Panel consists of
Chief Justice Hedges and Justices Guzman and Brown.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 









[1]  Deputy Rocabado is a volunteer deputy.  She
testified that all volunteer deputies receive the same training as deputies who
are paid for their work.  





[2]  VanDine testified that he did not think the item was
a weapon, so he did not strip-search appellant at the scene.





[3]  State=s
Exhibit 1 was the cocaine found in the patrol car.