COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| --- | --- | --- |
| RAMON PEÑA, | | No. 08-16-00028-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20140C07272) |
| | § | |

## O P I N I O N

Ramon Peña appeals the trial court's denial of his motion to suppress his arrest and physical evidence found in his vehicle following a traffic stop conducted by the El Paso Police Department. In his sole issue for review, Appellant claims the trial court erred by denying his motion to suppress because reasonable suspicion to conduct a traffic stop did not exist.

## BACKGROUND

At 10:30 in the evening on July 2, 2014, El Paso Police Department Officer Fred Arias and his partner, Officer Acosta, were working in uniform and in a marked unit with the Pebble Hills Gang Unit. Officer Arias and his partner were traveling westbound in the left lane on Vista Del Sol, an area of high narcotic activity, when they observed a vehicle pass them in the Vista Del Sol and Zaragosa intersection going eastbound. Once the vehicle passed the patrol unit, the officers

saw the vehicle did not have a rear license plate light, in violation of the Texas Transportation Code. While in the left-turn lane, the officers made a U-turn at the Vista Del Sol and Zaragosa intersection to further inspect the vehicle. As the officers made the U-turn, they witnessed the vehicle make an abrupt, unsafe lane change to the outside left lane—a second violation of the Texas Transportation Code. Then, the vehicle cut again into the turning lane and turned left on Diego Rivera Street without signaling—the vehicle's third violation of the Texas Transportation Code. The officers turned on the patrol unit's siren and lights to initiate a traffic stop. Although it was safe for the vehicle to pull over, the vehicle continued traveling north on Diego Rivera, maintaining its speed. Officer Arias hit the electronic horn several times, but the vehicle did not pull over and continued driving for about two blocks. The vehicle abruptly stopped by pulling halfway into a residential driveway, blocking the sidewalk. Officer Arias and Officer Acosta approached the vehicle. Officer Arias spoke to Appellant, the driver. Officer Arias explained to Appellant the reason for the stop and asked him why he failed to initially pull over; Appellant did not respond. Appellant provided his driver's license upon Officer Arias's request. Officer Arias asked Appellant to step out of the vehicle for officer safety and ensure he would not have the opportunity to flee. Appellant accompanied Officer Arias to the rear of the vehicle where Officer Arias conducted a pat-down. After not finding anything on Appellant's person, Officer Arias ran his driver's license number and discovered Appellant had fifteen outstanding traffic warrants. Appellant was subsequently placed under arrest because of the warrants. Officer Arias sat Appellant on the curb between the patrol unit and the vehicle. Officer Arias returned to his partner who was making contact with the passenger of the vehicle. The passenger was also placed under arrest because of his outstanding warrants.

2

Officer Acosta detected an odor of marijuana emanating from the vehicle and brought it to Officer Arias's attention. While Officer Acosta proceeded with his investigation, Officer Arias asked Appellant where the marijuana odor was coming from; Appellant denied a marijuana odor existed. At this point, Officer Acosta searched the vehicle while Officer Arias stood over him. Officer Acosta found a cigarillo pack and a small plastic bag of marijuana located in the center console. Officer Acosta also found a small plastic bag of what he believed to be marijuana wax located in the passenger side door pocket.[1] With both Appellant and the passenger under arrest, the officers waited for a wrecker to arrive and proceeded with Appellant and the passenger to the El Paso Police Department at Pebble Hills.

Appellant was indicted for possession of marijuana in the amount of two ounces or less. He filed a pretrial motion to suppress, alleging officers lacked probable cause and reasonable suspicion to conduct a traffic stop and search his vehicle. The trial court denied Appellant's motion to suppress. Appellant subsequently pleaded guilty to the offense of Possession of Drug Paraphernalia, a Class C Misdemeanor. This appeal followed.

## DISCUSSION

### Reasonable Suspicion

In his sole issue, Appellant contends the traffic stop was conducted without reasonable suspicion of criminal wrongdoing in violation of his Fourth Amendment rights. Specifically, Appellant contends the traffic stop was illegal because the officers lacked specific, articulable facts to support his engagement in criminal activity—here, his violation of the Transportation Code— which the Supreme Court concluded in *Terry v. Ohio* violates the Fourth Amendment's prohibition

---

[1] Was the charging instrument for the passenger and is not challenged here.

against unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). A "reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex.Crim.App. 2005).

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex.Crim.App. 2018). Almost complete deference is afforded to the trial court in determining historical facts, credibility, and demeanor that is supported by the record. *Id.*, at 190. Whether the facts are sufficient to give rise to reasonable suspicion is reviewed *de novo*. *Id.* Evidence that the trial court did not make explicit findings of fact is reviewed in the light most favorable to the trial court's ruling, and we assume the trial court made implicit findings of fact supporting the ruling. *Id.*

### Analysis

Reasonable suspicion exists when a "police officer has 'specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'" *Furr v. State*, 499 S.W.3d 872, 878 (Tex.Crim.App. 2016)(quoting *Wade v. State*, 422 S.W.3d 661, 668 (Tex.Crim.App. 2013)). A reasonable suspicion determination is an objective standard, and an "objectively justifiable basis for the detention" must be established. *Wade*, 422 S.W.3d at 668. The standard also requires a reviewing court to assess the totality of the circumstances to determine whether the officer had an objective suspicion of criminal activity. *Id.* To find that reasonable suspicion exists, the "legality of a traffic stop based on reasonable suspicion does not depend upon a showing that an actual offense was committed; it is sufficient to show that the officer reasonably

4

believed that an offense was in progress." *State v. Torrez*, 490 S.W.3d 279, 283 (Tex.App.--Fort Worth 2016, pet. ref'd).

In *Wehring v. State*, the court held that reasonable suspicion to initiate a traffic stop exists when an officer reasonably believes that a traffic violation has occurred. *Wehring v. State*, 276 S.W.3d 666, 668 (Tex.App.--Texarkana 2008, no pet.). There, an officer observed the defendant driving over the speed limit. *Id.*, at 668. Since the officer did not have a radar unit that could register the vehicle's speed, he continued to follow the vehicle and observed the defendant make a right turn without signaling. *Id.* The officer conducted a traffic stop because the defendant's failure to signal intent to turn was a violation of Section 545.104 of the Texas Transportation Code. *Id.* The traffic stop resulted in a DWI arrest and the defendant filed a motion to suppress. *Id.* The court concluded the traffic stop was proper because the officer believed the defendant's failure to signal was a traffic violation, and "'[i]f an officer has a reasonable basis for suspecting that a person has committed a traffic offense, the officer may legally initiate a traffic stop.'" *Id.*, at 669, (quoting *Zervos v. State*, 15 S.W.3d 146, 151 (Tex.App.--Texarkana 2000, pet. ref'd)). The court held the denial of the motion to suppress the evidence relating to the DWI was proper because it was gathered after the lawful traffic stop. *Id.*, at 671.

Here, viewing the facts in the light most favorable to the ruling, as we are required to do, Officer Arias, a twenty-eight-year law enforcement veteran, pulled Appellant over after observing him commit three traffic violations. First, Officer Arias and his partner observed Peña's vehicle without its rear license plate illuminated, which is a violation of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 547.322(f)(West 2011). The officers observed this at about 10:30 p.m., which made the non-illuminated license plate readily observable. Second, Officer Arias and

5

his partner observed the vehicle make an abrupt, unsafe lane change as it cut across the lane of travel and in front of another vehicle, which is also a violation of the Texas Transportation Code. *See* TEX.TRANSP. CODE ANN. § 545.060(a)(2)(West 2011). Third, Peña's vehicle was in the left lane and turned left onto Diego Rivera Street without signaling, also a violation of the Texas Transportation Code. *See* TEX.TRANSP. CODE ANN. § 545.104(a)(West 2011). The trial court included these facts in its Findings of Fact, which as a reviewing court we must accept as true because of the "'longstanding rule that appellate courts should show almost total deference to a trial court's findings of fact[.]'" *State v. Cullen*, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006)(quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997)); As a result of these traffic violations, Officer Arias initiated a traffic stop and turned on his patrol unit's siren and lights, and then hit the electronic horn several times because Peña would not pull over. After about two blocks, Peña abruptly stopped halfway up a residential driveway.

Under the totality of the circumstances presented, Officer Arias had an objective basis for suspecting criminal wrongdoing, thus allowing him to initiate a traffic stop. *See Wehring*, 276 S.W.3d at 669. The appellant in *Wehring* was observed committing one traffic violation, which the court found to be sufficient for initiating a traffic stop. *Id*., at 671. Unlike the appellant in *Wehring*, Appellant was observed committing not just one, but three traffic violations. This is sufficient to support Officer Arias's reasonable suspicion of a traffic violation because "[w]hen a traffic offense is committed in the presence of a peace officer, the detention is reasonable." *Id.,* (citing *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App. 1992)). Moreover, Officer Arias initiated the traffic stop by turning on his patrol unit's lights and sirens, and had to hit the electronic horn several times because of Appellant's failure to pull over, which created further suspicion of

criminal activity. Appellant contends the State did not provide evidence to support reasonable suspicion to effectuate a traffic stop because he was not cited for the traffic violations; however, issued citations are not necessary to establish reasonable suspicion. *Kelly v. State*, 331 S.W.3d 541, 550 (Tex.App.--Houston [14th Dist.] 2011, pet. ref'd)("Although the trial court was free to consider the failure to issue a written citation . . . this evidence does not mean the officers lacked reasonable suspicion as a matter of law.").

Appellant also argues the trial court erred in denying his motion to suppress because the evidence seized was the result of a warrantless search that occurred without his consent. However, in its Findings of Fact and Conclusions of Law, the trial court correctly found that Appellant's outstanding traffic warrants subjected him to lawful arrest. During a traffic stop, "law-enforcement officers may request information such as a driver's license and vehicle registration, and may conduct a computer check of that information." *Kelly*, 331 S.W.3d at 549. Officer Arias did just this and discovered Appellant had fifteen outstanding warrants, which established probable cause for lawful arrest. *See Hayley v. State*, 480 S.W.2d 644, 645 (Tex.Crim.App. 1972). The defense attempted to discredit Appellant's outstanding warrants by arguing Officer Arias failed to include this information in his complaint affidavit, thus making it unclear whether the warrants existed. Nonetheless, in its Findings of Fact and Conclusions of Law, the trial court found Officer Arias's testimony regarding Appellant's warrants credible, which was a determination for the fact finder to make. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999)("[Reviewing courts] may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder.).

In addition, a warrantless search is considered "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Katz v. U.S.*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). The search of Appellant's vehicle is proper under the automobile exception. "Law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State,* 279 S.W.3d 330, 335 (Tex.Crim.App. 2009). "[P]robable cause exists 'when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found.'" *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex.Crim.App. 2007)(quoting *Estrada v. State*, 154 S.W.3d 604, 609 (Tex.Crim.App. 2005).

The trial court found in its Findings of Fact that the search was conducted because of the odor of marijuana emanating from Appellant's vehicle. During a traffic stop, "if an officer develops reasonable suspicion that another violation has occurred, the scope of the initial investigation expands to include the new offense." *Goudeau v. State*, 209 S.W.3d 713, 719 (Tex.App.--Houston [14th Dist.] 2006, no pet.); *see also Sims v. State*, 98 S.W.3d 292, 295–97 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd)(finding the officer had reasonable suspicion to investigate criminal activity beyond the reason for the stop). Because both officers had independent recollections of a marijuana odor, sufficient probable cause to conduct a search of the vehicle existed. *See United States v. Johns*, 469 U.S. 478, 482, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985)("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband."); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex.App.--Fort Worth 1998, pet. ref'd)(holding that the officer's further investigation of

8

appellant's vehicle during a traffic stop "was supported by a reasonable suspicion because the officer smelled . . . marihuana emanating from the car."). Although the odor of marijuana alone gave the officers probable cause to search Appellant's vehicle, Peña's failure to stop, and the ready mobility of the vehicle, created further suspicion of criminal activity. *Keehn*, 279 S.W.3d at 335 ("'ready mobility' of a vehicle creates 'an exigency'")(quoting *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996)). Appellant failed to pull over after the officers turned on the patrol unit's lights and sirens, although it was safe for him to do so. It was only after about two blocks and after Officer Arias hit the electronic horn several times that Appellant finally stopped his vehicle, which he did in an abrupt manner by pulling halfway into a residential driveway. This occurred in an area known for high narcotic activity, and although an "area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime . . . officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." [Citation omitted]. *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). Under the totality of the circumstances, the officers possessed reasonable suspicion based on objective facts to detain Appellant, and because the search of Appellant's vehicle was authorized under the automobile exception, the trial court did not err in denying his motion to suppress. Accordingly, Appellant's sole issue is overruled.

## CONCLUSION

Having overruled the sole issue presented for review, the judgment of the trial court is affirmed.

9

July 25, 2018

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)